**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 12, 2012**

# In the Court of Appeals of Georgia

A12A0035, A12A0036, A12A0372, A12A0373; PAULDING COUNTY, GEORGIA, BOARD OF COMMISSIONERS et al. v. MORRISON et al.

DILLARD, Judge.

These four related appeals stem from two complaints filed in the Superior Court of Paulding County by appellees Thad Morrison III and Melissa W. Morrison, in which the Morrisons challenged two separate zoning decisions issued by appellant, the Board of Commissioners of Paulding County, Georgia, and asserted claims of fraud against the Board and its members (collectively, the "Board").[1] The Board filed

---

[1] The appellant herein includes the individual members of the Board who were named parties to the original complaints filed by the Morrisons, specifically Jerry Shearin, in his official capacity as chairman of the Board; Larry Ragsdale, in his official capacity as a commissioner/member of the Board; Don Powell, in his official capacity as a commissioner/member of the Board; Hal Echols, in his official capacity as a commissioner/member of the Board; and Wayne Kirby, in his official capacity as a commissioner/member of the Board.

timely answers to the complaints, both of which included a "Wherefore" clause that contained a prayer for attorney fees. In four separate orders, the superior court concluded that the prayer for attorney fees in the Board's answers constituted counterclaims against the Morrisons, held that the counterclaims violated the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute,[2] struck the Wherefore clauses from the Board's answers, and ordered both the Board and its attorney to pay over $265,000 in attorney fees to the Morrisons as a sanction for the alleged statutory violations. Finding that the superior court's orders are neither authorized by the law nor the facts of this case, we reverse.

### I. Facts

In May 2006, the Board issued two zoning permits to a company intending to develop real property in Paulding County. One of the permits authorized a rezoning of the real property and the other added more property to the rezoned land (collectively, the "Property"). The Morrisons, who owned land adjacent to the Property, opposed the rezoning. In June 2006, the Morrisons filed two complaints in superior court seeking to appeal the grant of the permits and asserting claims of fraud

---

[2] *See* OCGA § 9-11-11.1.

2

and corruption against the Board and its individual members.[3] The Morrisons prayed for $500,000 in compensatory damages and $1,000,000 in punitive damages.

The Board timely filed verified answers to the complaints. In its answers, the Board asserted no independent counterclaims, but each pleading included a "Wherefore" clause in which the Board prayed in paragraph (c) "that all costs, expenses, and reasonable attorney's fees be awarded to [the Board] for responding to" the Morrisons's complaints (hereinafter, the "Wherefore clauses").

Shortly thereafter, the Morrisons's counsel sent a letter to the Board in which he asserted that the Wherefore clauses in the Board's answers invoked the anti-SLAPP statute, OCGA § 9-11-11.1, and claimed that the Board had improperly failed to verify its answers in compliance with OCGA § 9-11-11.1 (b). The Board responded with a letter in which it "vigorously den[ied]" that the Wherefore clauses constituted "claims" within the meaning of the OCGA § 9-11-11.1 (a) and/or that they invoked the statute in any way, and set forth legal authority in support of its position. The Board nonetheless amended its answers in August 2006 to include

---

[3] Case Numbers A12A0035 and A12A0372 govern the orders in civil action file number 06-CV-2854, which stems from the grant of zoning application 2006-35-Z. Case Numbers A12A0036 and A12A0373 govern the orders in civil action file number 06-CV-2855, which stems from the grant of zoning application 2006-29-Z.

verifications[4]—filed "under protest" and "solely in an abundance of caution and in order to avoid unnecessary expense and undue delay in the case"—in which the Board maintained that it had not asserted "claims" and that OCGA § 9-11-11.1 had no application to its answers, but certified that the Wherefore clauses were not "interposed for any purpose, such as to suppress [the Morrisons's] right to free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation."[5]

Also in 2006, the Board filed two separate motions to dismiss the Morrisons's complaints, asserting, *inter alia*, that the Morrisons failed to present a timely and sufficient ante-litem notice and that the complaints were otherwise barred as a matter of law because: (1) they were untimely, (2) the Morrisons lacked standing to bring the claims, and (3) the damages sought (*i.e.*, punitive damages) were not recoverable

---

[4] The certified verifications were signed by Jerry Shearin, in his official capacity as Chairman of the Board and for each individual Board member, and by the Board's counsel.

[5] *See* OCGA § 9-11-11.1 (b) ("If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim.").

4

against a governmental entity. The superior court never ruled on these motions, which remain pending in that court.[6]

For the next two years, the Morrisons engaged in vigorous litigation, including seeking the recusal of two superior-court judges, although no further express mention was made of the Wherefore clauses. Then, in May 2008, the Morrisons moved to dismiss the Board's defensive pleadings as violative of the anti-SLAPP statute, asserting that the Board (1) filed counterclaims in its answers and (2) failed to file verifications in accordance with OCGA § 9-11-11.1 (b).[7]

The superior court did not hold a hearing on the Morrisons's motion until March 2010, nearly two years later.[8] It subsequently issued two separate and nearly identical orders—dated November 22, 2010, and May 12, 2011, respectively—in

---

[6] As of the time of this appeal, the Board's motions to dismiss have been pending in the superior court for five years.

[7] The Morrisons's motion made no mention of the verifications that the Board filed "in an abundance of caution" two years earlier in response to their letter.

[8] *See* OCGA § 9-11-11.1 (d) ("All discovery and any pending hearings or motions in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to [OCGA § 9-11-11.1 (b)]. The motion shall be heard not more than 30 days after service unless the emergency matters before the court require a later hearing."). Although the court issued a rule nisi for a hearing on all pending motions, the court heard only the Morrisons's motion to dismiss at that time.

5

which it held that the Wherefore clauses in the Board's answers constituted counterclaims that violated the anti-SLAPP statute and dismissed the Board's prayers for attorney fees.[9] The superior court acknowledged in the orders that the Board had filed verifications in accordance with OCGA § 9-11-11.1 (b), but summarily concluded that the verifications were false because the "counterclaims" were neither grounded in fact nor warranted by law; that they were asserted for the improper purpose of suppressing the Morrisons' right to petition the government for the redress of grievances; and that the Morrisons had incurred unnecessary legal expenses in defending them.[10] The court then ruled that the Morrisons were entitled to recover attorney fees as a sanction pursuant to OCGA § 9-11-11.1 (b), and scheduled hearings to determine the amount of those fees.[11]

During the subsequent hearings in each respective case, the Morrisons's counsel, Glen E. Stinson, was the sole witness. Although Stinson neither produced

[9] The November 22, 2010 order was issued in civil action file number 06-CV-2854 and the May 12, 2011 order was issued in civil action file number 06-CV-2855.

[10] The superior court made this finding despite the fact that, by all accounts, the merits of the underlying lawsuits or the Board's defenses had never been considered.

[11] The Board sought a certificate of immediate review to appeal the orders, but the superior court denied the request.

nor tendered any billing statements, invoices, or business records, he testified that he had incurred $147,765 in fees in one case and $117,348.68 in fees in the other.[12] Stinson further testified that, with the exception of time spent preparing and filing the complaints, "every hour" of the fees incurred during the five years of litigation was directly attributable to the Board's Wherefore clauses.[13]

The superior court entered two separate orders, both dated July 6, 2011, granting judgment against the Board and awarding Stinson the full amount of the fees requested in the two cases, a total award of $265,113.68, against both the Board and its counsel, to be paid instanter.[14]

We granted the Board's applications for interlocutory appeal to consider all four of the superior court's rulings—the orders dated November 22, 2010, and May

---

[12] Over strenuous foundational objections by the Board, Stinson testified from a summary "statement" that he created immediately prior to and for the purpose of each respective hearing.

[13] Stinson testified that he segregated from his total request those fees incurred solely as a result of his litigation with the developer, which was a named party to the original lawsuits but is not a party to this appeal.

[14] *See Hagemann v. Berkman Wynhaven Assocs.*, 290 Ga. App. 677, 683 (660 SE2d 449) (2008) (recognizing that when awarding attorney fees as a sanction for a violation of OCGA § 9-11-11.1 (b), the court "should apportion its award to the amount attributable only to the [offending] claims").

7

12, 2011, in which the superior court held that the Wherefore clauses constituted counterclaims and violated the anti-SLAPP statute, and the two orders dated July 6, 2011, in which the superior court sanctioned the Board for the full amount of Stinson's fees.[15] And while we could reverse the superior court's rulings for any number of reasons, it is only necessary to do so on the ground that the Wherefore clauses in the Board's answers did not constitute counterclaims.

## II. Analysis

We begin by noting that Georgia's anti-SLAPP statute was adopted in recognition "that it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances."[16] Its purpose is to prevent a "chill[ing]" of "the valid exercise

---

[15] Contrary to the Morrisons's assertion, we have jurisdiction to consider all four of the superior court's orders in these appeals. After granting the Board's applications for interlocutory appeal of the two July 6, 2011 orders pursuant to OCGA § 5-6-34 (b), we are authorized to exercise jurisdiction over the previously issued orders pursuant to OCGA § 5-6-34 (d). *See E. H. Crump Co. of Ga., Inc. v. Millar*, 200 Ga. App. 598, 598 (1) (409 SE2d 235) (1991).

[16] OCGA § 9-11-11.1 (a).

of the constitutional rights of freedom of speech and the right to petition government for a redress of grievances . . . through abuse of the judicial process."[17]

Consequently, the General Assembly adopted a mandate that, "[f]or any *claim* asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern," the party asserting the claim and his or her attorney must file a verification in accordance with OCGA § 9-11-11.1 (b).[18] The verification in essence certifies that the claim is well-grounded in law and fact, is not directed toward a privileged communication, and is not interposed for an improper purpose.[19] If the court determines that a party falsely verified a claim, the party and/or

---

[17] *Id.*

[18] OCGA § 9-11-11.1 (b) (emphasis added); *see EarthResources, LLC v. Morgan County*, 281 Ga. 396, 401 (4) (638 SE2d 325) (2006) ("The coverage of the anti-SLAPP statute extends to abusive litigation that seeks to chill exercise of certain First Amendment rights based upon defamation, invasion of privacy, breach of contract, and intentional interference with contractual rights and opportunities arising from speech and petition of government." (punctuation omitted)).

[19] *See* OCGA § 9-11-11.1 (b).

his or her counsel shall be sanctioned, and the sanction may include dismissal of the claim and/or an order to pay the other party's attorney fees.[20]

Under well-established Georgia law, however, the Board's prayer for relief requesting attorney fees does not, in and of itself, constitute a claim.[21] Indeed, even had the Board intended it so, "[t]here is no law by which [a] case brought by a plaintiff can be turned into a damage suit by the defendant against the plaintiff for bringing it, while it is still pending."[22] Moreover, we have previously held that nothing in the anti-SLAPP statute imposes an obligation to file OCGA § 9-11-11.1

[20] *See id*; *Hagemann*, 290 Ga. App. at 682-83.

[21] *See Kinzy v. Waddell*, 203 Ga. 689, 692 (1) (47 SE2d 872) (1948) ("The prayer or demand for relief is no part of the [pleader's] cause of action." (punctuation omitted)); *Acevedo v. Kim*, 284 Ga. 629, 635 (669 SE2d 127) (2008) (Hines, J., dissenting) ("As a general matter, a prayer for relief is not deemed to constitute part of the cause of action."); *Drug Emporium, Inc. v. Peaks*, 227 Ga. App. 121, 128 (2) (c) (488 SE2d 500) (1997) (holding that appellees' prayer for relief requesting punitive damages was not sufficient to create a claim for the same)*; see also Mitchell v. City of Atlanta*, 217 Ga. 202, 205 (3) (121 SE2d 764) (1961) (holding that appellant's prayer for abatement did not create a claim for damages or injunction upon the theory of nuisance because "[t]he sufficiency of a petition depends upon the facts pleaded, not the prayer for relief"); *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 146 (3) (524 SE2d 790) (1999) ("[T]he prayer is not an allegation in the complaint which requires an answer (OCGA § 9-11-8(d)) and is not part of [the] cause of action." (punctuation omitted)).

[22] *Fender v. Ramsey & Phillips*, 131 Ga. 440, 440 (2) (62 SE 527) (1908); *accord Moody v. Harris*, 170 Ga. App. 254, 256 (2) (316 SE2d 781) (1984).

10

(b) verifications in conjunction with purely defensive motions.[23] And finally, the anti-SLAPP statute does not preclude a party defending a lawsuit from preserving its right to seek attorney fees and expenses if the lawsuit later is determined to lack substantial justification.[24]

In sum, the superior court has a duty to construe "[a]ll pleadings . . . as to do substantial justice."[25] That was not done in this case. The court's determination that the Board's Wherefore clauses were impermissible counterclaims constitutes plain

---

[23] *See Citizens for Ethics in Gov't, LLC v. Atlanta Dev. Auth.*, 303 Ga. App. 724, 732 (1) (694 SE2d 680) (2010) ("The [appellants] have provided no authority, and we have found none, to support their assertion that [appellees] had an obligation to provide an OCGA § 9–11–11.1(b) verification of a defensive motion.").

[24] *See* OCGA § 9-11-11.1 (e) ("Nothing in this Code section shall affect or preclude the right of any party to any recovery otherwise authorized by common law, statute, law, or rule."); *EarthResources, LLC*, 281 Ga. at 401 (4) ("[T]he anti-SLAPP statute was not intended to immunize from the consequences of abusive litigation a party who has asserted a claim with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim." (punctuation omitted)); *see also* OCGA § 9-15-14.

[25] OCGA § 9-11-8 (f).

11

legal error,[26] and consequently its subsequent holdings that the "counterclaims" were falsely verified and warranted sanctions must also be reversed.

*Judgment reversed. Ellington, C. J., and Phipps, P. J., concur.*

---

[26] *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002) ("The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact." (punctuation omitted)).