310 Ga. 279
FINAL COPY

S19G1265.  GEER v. PHOEBE PUTNEY HEALTH SYSTEM, INC.

BETHEL, Justice.

In *Geer v. Phoebe Putney Health System*, 350 Ga. App. 127, 128 (828 SE2d 108) (2019), the Court of Appeals held that Georgia's anti-SLAPP statute, OCGA § 9-11-11.1, could not be invoked to strike a counterclaim for attorney fees brought under OCGA § 50-18-73 (b) in response to a suit to enforce a request under Georgia's Open Records Act. We granted certiorari to consider whether the Court of Appeals erred in that determination. For the reasons set forth below, we affirm the judgment of the Court of Appeals.

1. *Factual background and procedural history.*

The facts underlying this case are largely undisputed. In December 2017, Claude Wilson Geer IV filed a request with Phoebe Putney Health System, Inc.,[1] under the Open Records Act seeking

---

[1] According to Geer's pleadings, the Hospital Authority of Albany-

the release of minutes of its board meetings held between January 2008 and December 2017. The following day, Phoebe Putney denied the request, asserting that it is not subject to the Open Records Act and that its minutes and other documents and records are not "public records" within the meaning of the Act.

Following the denial of his request, Geer filed suit against Phoebe Putney in superior court seeking an injunction compelling the release of the records he had requested and other relief. Phoebe Putney answered the complaint and asserted multiple defenses to Geer's claims, including that it is not subject to the Open Records Act. Along with its answer, Phoebe Putney also filed a counterclaim for attorney fees under OCGA § 50-18-73 (b), which provides:

> In any action brought to enforce the provisions of [the Open Records Act] in which the court determines that either party acted without substantial justification either in not complying with [the Open Records Act] or in instituting the litigation, the court shall, unless it finds that special circumstances exist, assess in favor of the

Dougherty County owns Phoebe Putney Memorial Hospital. In 1990, the Authority entered into a lease and transfer agreement with Phoebe Putney Memorial Hospital, Inc. ("PPMH"), a non-profit corporation, under which PPMH operates the hospital. PPMH is a wholly owned subsidiary of Phoebe Putney Health System, Inc.

2

complaining party reasonable attorney's fees and other litigation costs reasonably incurred. Whether the position of the complaining party was substantially justified shall be determined on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought.

In response, Geer filed a motion to strike Phoebe Putney's counterclaim for attorney fees under Georgia's anti-SLAPP statute, OCGA § 9-11-11.1, asserting that the counterclaim was nothing more than an effort to chill his rights to petition the government and to free speech. Following a hearing, the trial court denied Geer's motion to strike, concluding that he had not made a prima facie showing that the anti-SLAPP statute applied to the counterclaim. The trial court did not consider the merits of Phoebe Putney's claim for attorney fees.

Geer appealed the trial court's order to the Court of Appeals pursuant to OCGA § 9-11-11.1 (e). The Court of Appeals later affirmed the trial court's judgment, concluding that the anti-SLAPP statute does not apply to an Open Records Act defendant's claim for attorney fees because the anti-SLAPP statute "does not preclude a

party defending a lawsuit from preserving its right to seek attorney fees and expenses if the lawsuit later is determined to lack substantial justification." *Geer*, 350 Ga. App. at 128 (punctuation omitted) (quoting *Paulding County Bd. of Commrs. v. Morrison*, 316 Ga. App. 806, 810-811 (II) (728 SE2d 921) (2012)). The Court of Appeals concluded that, although the request for attorney fees in *Morrison* had not been styled as a counterclaim, for purposes of the anti-SLAPP statute, it makes no difference whether the request for attorney fees "is styled as a counterclaim or as a separate motion" as long as the defendant relies "on an alleged lack of substantial justification" for the plaintiff's claims as its basis for relief. *Geer*, 350 Ga. App. at 128. Citing this Court's decision in *EarthResources v. Morgan County*, 281 Ga. 396, 400 (4) (638 SE2d 325) (2006), the Court of Appeals went on to note that "[t]he anti-SLAPP statute was not intended to immunize parties from the consequences of abusive litigation[,] and it plainly does not extend to protecting those who abuse the judicial process." (Punctuation omitted.) *Geer*, 350 Ga. App. at 128.

4

Geer filed a timely petition for certiorari in this Court, which we granted, directing the parties to address a single question: whether the Court of Appeals erred in holding that the anti-SLAPP statute does not apply to Phoebe Putney's counterclaim for attorney fees under the Open Records Act. After considering the parties' arguments on that issue, including at oral argument held virtually on May 21, 2020, we conclude that the Court of Appeals did not err in affirming the trial court's denial of Geer's motion to strike. However, as we explain below, we reach that conclusion based on a somewhat different rationale than that set forth by the Court of Appeals.

2. *The Open Records Act and the anti-SLAPP statute.*

As we have previously noted, among the purposes of Georgia's Open Records Act is fostering confidence in government through openness to the public. See *City of Atlanta v. Corey Entertainment*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004). To that end, the Act provides broadly for access to "public records" prepared, maintained, or received by any "agency" covered by the Act. OCGA § 50-18-70 (b).

5

The Act allows members of the public to inspect and copy these records, provides certain disclosure exceptions, and prescribes civil and criminal penalties for Act violations. See OCGA §§ 50-18-71, -50-18-72, 50-18--74 (a). The Act gives superior courts jurisdiction over actions brought to enforce the provisions of the Act. See OCGA § 50-18-73 (a). It also empowers the trial court to assess attorney fees and reasonable litigation costs against a record holder if the court determines that it acted without substantial justification in not complying with the Open Records Act or against a person requesting records if the court determines that it acted without substantial justification in instituting litigation. See OCGA § 50-18-73 (b). Critically, a claim for attorney fees under the Act is evaluated by the court "on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought." Id.

As Phoebe Putney concedes, because requests under the Open Records Act, by their very nature, pertain to public entities and records regarding matters of public interest or concern, issues regarding the protection of requestors' constitutional rights to free

6

speech and petition may arise any time a request for records is denied. Such rights may also be threatened when a party sues to enforce a records request under the Open Records Act and the party defending the suit files a counterclaim or initiates separate litigation intended solely to harass the party requesting records under the Act. Suits initiated for that purpose or to otherwise impede participation in public affairs are known as "strategic lawsuits against public participation" or "SLAPPs." See *Wilkes & McHugh, P.A. v. LTC Consulting*, 306 Ga. 252, 257 (2) (803 SE2d 119) (2019).

As the Court of Appeals has articulated, a SLAPP is "a lawsuit intended to silence and intimidate critics or opponents by overwhelming them with the cost of a legal defense until they abandon that criticism or opposition." *Rogers v. Dupree*, 340 Ga. App. 811, 814 (2) (799 SE2d 1) (2017). SLAPPs are "meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and

7

driving up the costs of litigation." *Wilkes*, 306 Ga. at 257 (2). Many

states, including Georgia, have enacted statutes designed to curtail

SLAPPs. See *Jubilee Dev. Partners v. Strategic Jubilee Holdings*,

344 Ga. App. 204, 207 (809 SE2d 542) (2018). Those statutes,

including Georgia's, give a person or entity who believes they have

been subjected to a SLAPP an avenue for ending the suit quickly,

summarily, and at minimal expense.

Codified at OCGA § 9-11-11.1, Georgia's anti-SLAPP statute

was, according to the General Assembly, enacted to

> . . . encourage participation by the citizens of Georgia in
> matters of public significance and public interest through
> the exercise of their constitutional rights of petition and
> freedom of speech. The General Assembly of Georgia
> further finds and declares that the valid exercise of the
> constitutional rights of petition and freedom of speech
> should not be chilled through abuse of the judicial process.
> . . .

OCGA § 9-11-11.1 (a). To advance this goal, the anti-SLAPP statute

covers any

> . . . claim for relief against a person or entity arising from
> any act of such person or entity which could reasonably
> be construed as an act in furtherance of the person's or
> entity's right of petition or free speech under the

8

Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern[.]

OCGA § 9-11-11.1 (b) (1). OCGA § 9-11-11.1 (c) further defines the coverage of the anti-SLAPP statute. Subsection (c) provides:

As used in this Code section, the term "act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" shall include:
(1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
(2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
(3) Any written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or
(4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

As we have previously noted, the coverage of the anti-SLAPP statute extends to abusive litigation that seeks to chill exercise of

9

constitutional rights to free speech and petition based upon claims such as defamation, invasion of privacy, breach of contract, and intentional interference with contractual rights and opportunities arising from speech and petition of government. *EarthResources*, 281 Ga. at 400 (4).

As we discussed in *Wilkes*, the anti-SLAPP statute sets forth a procedure for challenging alleged SLAPPs at the outset of litigation. See 306 Ga. at 259 (2) (a). The first paragraph of OCGA § 9-11-11.1 (b) provides that any claim covered by the statute "shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim." OCGA § 9-11-11.1 (b) (1). The second paragraph provides: "In making the determination as provided for in paragraph (1) of this subsection, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based[.]" OCGA § 9-11-11.1 (b) (2).

The anti-SLAPP statute provides for prompt resolution of a

motion to strike.  Under OCGA § 9-11-11.1 (d),

> [a]ll discovery and any pending hearings or motions in the
> action shall be stayed upon the filing of a motion to
> dismiss or a motion to strike made pursuant to subsection
> (b) of this Code section until a final decision on the motion.
> The motion shall be heard not more than 30 days after
> service unless the emergency matters before the court
> require a later hearing. The court, on noticed motion and
> for good cause shown, may order that specified discovery
> or other hearings or motions be conducted
> notwithstanding this subsection.

Upon the filing of a motion to strike under the anti-SLAPP

statute, the trial court must first determine whether the claim

against which the motion is brought is subject to the anti-SLAPP

statute. If it is not, the trial court's analysis ends. However, if the

claim is subject to the anti-SLAPP statute, the court proceeds to

analyze the motion under OCGA § 9-11-11.1 (b) (1). As we discussed

in *Wilkes*,

> the court must [first] decide whether the party filing the
> anti-SLAPP motion . . . has made a threshold showing
> that the challenged claim is one arising from protected
> activity. It is not enough to show that the claim was filed
> after protected activity took place or arguably may have
> been triggered by protected activity. The critical
> consideration is whether the cause of action is based on

11

the defendant's protected free speech or petitioning activity. A defendant meets its burden by demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out in [OCGA § 9-11-11.1 (c)]. If a court concludes that this threshold showing has been made, it must proceed to the second step of the analysis and decide whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. To meet this burden, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. . . . Only a claim that satisfies both prongs of the anti-SLAPP statute — i.e., that arises from protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken. Appellate review of an order granting or denying an anti-SLAPP motion is de novo.

(Citations, punctuation and emphasis omitted.) 306 Ga. at 261-263

(2) (b).

3. *The anti-SLAPP statute cannot be used to strike claims for attorney fees under OCGA § 50-18-73 (b).*

Geer has asserted that Phoebe Putney's counterclaim to his Open Records Act action should be stricken pursuant to the anti-SLAPP statute. To come under the protection of the statute, Geer asserts that his suit against Phoebe Putney to enforce his records

request is both a petition in a judicial proceeding and conduct in furtherance of his right to free speech, as those terms are used in OCGA § 9-11-11.1 (c), such that his conduct should be deemed an "act in furtherance of [his] right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public concern" under OCGA § 9-11-11.1 (c). Geer then asserts that Phoebe Putney's counterclaim for attorney fees under OCGA § 50-18-73 (b) is meritless and intended solely to chill those rights by driving up the cost of litigating his dispute under the Open Records Act and that the counterclaim should therefore be stricken pursuant to OCGA § 9-11-11.1 (b) (1). As part of this argument, Geer asserts that, because Phoebe Putney brought its request for fees as a counterclaim rather than making the request after the merits of his Open Records Act claim has been litigated, the trial court erred by not considering Phoebe Putney's claim for attorney fees under the two-prong analysis outlined in OCGA § 9-11-11.1 (b) (1) that we discussed at length in *Wilkes*. Geer also argues that, because Phoebe Putney's

13

claim for fees was brought as a counterclaim near the outset of the litigation, the trial court cannot defer a decision on his motion to strike until the resolution of the underlying litigation because, absent emergency circumstances, OCGA § 9-11-11.1 (d) requires the trial court to hear a motion to strike within 30 days.

But Geer's arguments miss the key aspect of a claim for attorney fees brought under OCGA § 50-18-73 (b) that distinguishes it from other types of claims that might be stricken pursuant to the anti-SLAPP statute: a trial court must evaluate a claim for attorney fees under the Open Records Act "on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought." This is in contrast to a claim such as defamation which directly targets speech or another protected activity that has already occurred at the time the suit is brought. See, e.g., *Dellinger-Allen v. O'Brien*, 355 Ga. App. 811, 813-818 (1) (846 SE2d 124) (2020) (affirming trial court's grant of motion to strike defamation claim). As noted above, with regard to such a claim, the anti-SLAPP statute requires the court to "consider the

pleadings and supporting or opposing affidavits stating the facts upon which the liability or defense is based[.]" OCGA § 9-11-11.1 (b) (2). The parties are ordinarily permitted to conduct discovery under the anti-SLAPP statute only to the extent the nonmoving party is a public figure and wishes to pursue discovery relating to the issue of actual malice. See OCGA § 9-11-11.1 (b) (2), (d).

In contrast, the text of OCGA § 50-18-73 (b) makes clear that the merits of a claim for attorney fees brought under the Open Records Act cannot be reached without an evaluation of the merits of the underlying dispute over the plaintiff's claim for records. In this case, the trial court cannot evaluate Phoebe Putney's allegation that Geer has pursued this litigation without substantial justification without reference to "the record as a whole which is made in the proceeding for which fees and other expenses are sought." Unlike a defamation suit or other claim subject to the anti-SLAPP statute that is to be evaluated at the pleading stage, while proceedings in the underlying litigation remain pending and unresolved, a claim for attorney fees under OCGA § 50-18-73 (b),

like the one Phoebe Putney brought here, is not yet ripe for consideration by the trial court because it is not yet in possession of "the record as a whole." Thus, in this case, absent that record and a resolution of the merits of Geer's underlying Open Records Act claim, Phoebe Putney would have no ability to establish that there is a probability that it will prevail on its claim for fees, as required by OCGA § 9-11-11.1 (b) (1), and it will have no such ability until Geer's claim under the Open Records Act is resolved.

The parties are before this Court largely because Phoebe Putney styled its request for attorney fees in this case as a counterclaim and filed that counterclaim in its responsive pleading to Geer's complaint. Phoebe Putney has indicated to this Court that it did so out of concern that its claim for attorney fees might have been deemed compulsory in nature under OCGA § 9-11-13 (a)[2] and

---

[2] OCGA § 9-11-13 (a) provides, in relevant part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

16

that it filed its request as a counterclaim merely to preserve its right to later seek an award of attorney fees at the conclusion of the litigation. But that was unnecessary.

The two statutes giving trial courts the authority to award attorney fees in this case contemplate that claims for fees may be raised for the first time at the conclusion of the litigation. See OCGA §§ 9-15-14 (e) (permitting parties in civil actions to request an award of attorney fees by motion at any time during the course of the action and up to 45 days after the final disposition of the action); 50-18-73 (b) (requiring award of attorney fees under the Open Records Act to be "on the basis of the record as a whole"). Additionally, even in the absence of a request for fees by either party at some point during or after the litigation, nothing would bar the trial court from sua sponte awarding attorney fees should the trial court determine that a party was entitled to such fees. See OCGA §§ 9-15-14 (b) (permitting a court to assess attorney fees "upon the motion of any party or the court itself"); 50-18-73 (b) ("In any action brought to enforce the provisions of this chapter in which the court determines that either

17

party acted without substantial justification either in not complying with this chapter or in instituting the litigation, the court shall, unless it finds that special circumstances exist, assess in favor of the complaining party reasonable attorney's fees and other litigation costs reasonably incurred."). Thus, Phoebe Putney would not have lost its right to an award of attorney fees by waiting to bring its request until the conclusion of the litigation. In fact, it might eventually receive a fee award from the trial court in the complete absence of such a request.

Even so, we must decide if Phoebe Putney's "counterclaim" for attorney fees nonetheless triggers the anti-SLAPP statute because it was brought near the outset of the litigation rather than at its conclusion. As we already decided in *EarthResources*, the anti-SLAPP statute does not operate against claims for attorney fees brought under OCGA § 9-15-14 by the defendant at the end of litigation. See 281 Ga. at 400 (4). In deciding that case, we essentially determined that claims for attorney fees filed at the end of the litigation have no chilling effect on the exercise of the

18

plaintiff's constitutional rights to free speech and petition. The question before us is whether there is any distinction between the claim in that case and a claim for attorney fees raised in a responsive pleading under the Open Records Act. We conclude today that there is not.

We recognize, as any reasonable plaintiff also would, that by enacting OCGA § 50-18-73 (b), the General Assembly has embedded within any lawsuit to enforce the Open Records Act the potential for attorney fees to be awarded against the plaintiff — even if the defendant never makes a claim or request for fees. The upshot: if, as we implicitly determined in *EarthResources*, the lingering potential for post-litigation fee awards will have no impermissible chilling effect on a plaintiff's rights to free speech and to petition the government, neither can the defendant's assertion of its right to such fees *during* the litigation have such an effect.

As Geer concedes, he has never argued that the anti-SLAPP statute could be used to bar Phoebe Putney from filing a request for attorney fees at the conclusion of this litigation. Our decision in

19

*EarthResources* clearly contemplates the same. Even so, Geer has, without asking us to reconsider our holding in *EarthResources*, failed to articulate how a claim for fees brought *during* the litigation somehow creates such an effect, such that recourse through the anti-SLAPP statute is needed.

For purposes of the anti-SLAPP statute, like the Court of Appeals, we see no difference between these two types of requests for fees. Whether styled as a "counterclaim" and brought during the pendency of the litigation or as a request for fees filed at its conclusion, the anti-SLAPP statute cannot operate to strike a defendant's statutory request for attorney fees. See *Geer*, 350 Ga. App. at 128. Moreover, because the attorney fees provisions remain applicable at the end of the litigation, there is no need for a defendant to invoke them in its responsive pleadings, as Phoebe Putney did here. Phoebe Putney's claim was, at worst, premature, and it need not have brought a counterclaim in order to preserve its right to later seek an award of attorney fees.

For the foregoing reasons, we conclude that Phoebe Putney's

request for attorney fees under OCGA § 50-18-73 (b) is not subject to a motion to strike under the anti-SLAPP statute. The trial court was thus not required to analyze Geer's motion to strike under the two-prong test set forth in OCGA § 9-11-11.1 (b) (1). We therefore affirm the judgment of the Court of Appeals.

*Judgment affirmed. All the Justices concur, except Blackwell and Warren, JJ., not participating.*

Decided October 6, 2020 —Reconsideration denied November 2, 2020.

Certiorari to the Court of Appeals of Georgia — 350 Ga. App. 127.

*Kermit S. Dorough, Jr.*, for appellant.

*Watson Spence, Louis E. Hatcher, F. Faison Middleton IV, Charles K. Wainright II, Maggie L. McMichael*, for appellee.