**FOURTH DIVISION
DILLARD, P. J.,
MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 19, 2022**

# In the Court of Appeals of Georgia

A22A0892. JOHNSON v. CORDTZ et al.

MERCIER, Judge.

Following the striking of his defamation-based action against Jeffrey Cordtz, Richard Alembik, and Shimshon Wexler ("Appellees"), Larry W. Johnson appeals, contending that the trial court erred by applying the Anti-SLAPP Statute, OCGA § 9-11-11.1, to his claims. Johnson concedes, however, that his claims should have been dismissed for failing to satisfy the pre-suit notice requirements of the Abusive Litigation Statute, OCGA § 51-7-80 et seq. For the reasons set forth below, we affirm.

A "SLAPP," or "Strategic Lawsuit Against Public Participation," is a "meritless lawsuit[] brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up [its] target's resources and driving up the costs of litigation." *Wilkes &*

*McHugh v. LTC Consulting*, 306 Ga. 252, 257 (2) (830 SE2d 119) (2019). The Anti-SLAPP Statute allows a defendant to make a motion to strike such a frivolous action as "an avenue for ending the suit quickly, summarily, and at minimal expense." *Geer v. Phoebe Putney Health System, Inc.*, 310 Ga. 279, 282 (2) (849 SE2d 660) (2020). A trial court's ruling on an Anti-SLAPP motion to strike is subject to de novo review, and the pleadings and affidavits submitted by the parties are considered in the light most favorable to the non-moving party. See, e.g., *RCO Legal, P.S., Inc. v. Johnson*, 347 Ga. App. 661, 661-662 (820 SE2d 491) (2018). See also OCGA § 9-11-11.1 (b) (2) (stating that, in determining whether a plaintiff's claim is subject to a motion to strike, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based").

With this standard in mind, the record indicates that Cordtz, as debtor, is in an an ongoing debt-collection dispute regarding a home equity line of credit ("HELOC") with the banking client of Johnson, an attorney. In 2019, Cordtz filed suit in Gwinnett County against Johnson's client, raising the propriety of certain aspects of the HELOC on which the debt-collection action was based and attempting to bring an end to the matter. On April 8, 2021, Johnson sent a letter to Cordtz and his attorney, Alembik, demanding both payment of the debt underlying the HELOC, which had

been accelerated, and warning about the accrual of and potential liability for Johnson's fees. After consulting with Wexler, an attorney experienced in matters involving the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., Alembik responded to Johnson, stating that the April 8th demand letter violated the FDCPA. Specifically, Alembik identified four alleged violations: (1) Johnson falsely represented the character, amount, or legal status of the HELOC; (2) he sought to collect amounts not expressly authorized by the agreement creating the debt or permitted by law; (3) he threatened to take action that cannot be legally taken; and (4) he failed to provide the notice required in an initial written communication to a consumer. Alembik copied Cordtz, his client, on the letter. That same day, Johnson spoke to Alembik and agreed to retract his April 8th letter, though he expressed disagreement with Alembik's April 15th response. After further consultation with Alembik and Cordtz, however, Wexler later filed a federal suit on Cordtz's behalf against Johnson, again raising Johnson's violation of the FDCPA.

In June 2021, Johnson emailed Alembik and Wexler, and he threatened to file suit against them unless the parties agreed to a settlement, including the dismissal of the FDCPA litigation. When these demands were not met, Johnson brought the present suit against Alembik, Cordtz, and Wexler, alleging that Alembik's April 15th

3

letter to Johnson was: (1) defamatory (a claim directed only at Alembik); (2) caused the intentional infliction of emotional distress; (3) was the product of a conspiracy between Cordtz, Alembik, and Wexler to defame Johnson; and (4) caused tortious interference with Johnson's business relations.[1] In essence, Johnson complained that the Appellees were maliciously prosecuting him simply because he represented the bank to which Cordtz allegedly owed a debt. Thereafter, Wexler filed a motion to dismiss or strike Johnson's complaint pursuant to the Anti-SLAPP Statute. See OCGA § 9-11-11.1 and OCGA § 9-11-12 (b) (6). Cordtz and Alembik filed a separate motion to dismiss Johnson's complaint, arguing that his contentions amounted to claims of abusive litigation under the Abusive Litigation Statute and that these claims were made without the required pre-suit notice. Cordtz and Alembik also joined Wexler's motion to dismiss or strike. In addition, Johnson filed a motion asking for limited discovery pursuant to the Anti-SLAPP Statute, arguing that he needed more evidence to determine whether the Appellees had acted in bad faith and with malice.[2]

---

[1] Though Johnson also initially alleged the negligent infliction of emotional distress, he subsequently decided not to pursue that claim.

[2] Parties are ordinarily permitted to conduct discovery under the Anti-SLAPP Statute regarding actual malice if the nonmoving party is a public figure. See OCGA § 9-11-11.1 (b) (2), (d) (the trial court has discretion under OCGA § 9-11-11.1 (d) to determine whether "good cause" has been shown for discovery and, if so, what

4

On December 9, 2021, following a hearing, the trial court granted Appellees' motion to strike Johnson's claims pursuant to the Anti-SLAPP Statute. After finding Johnson's claims subject to the statute, the trial court concluded that Johnson had failed to show a probability that he would prevail on the claims, citing the following alternative bases for this conclusion: (1) Johnson's claims comprised claims for abusive litigation, and Johnson failed to satisfy the Abusive Litigation Statute's mandatory pre-suit notice requirement; (2) Johnson's claims failed as a matter of law because there was no publication to support defamation or conspiracy to defame, no support for defamation per se, and no damages to support intentional infliction of emotional distress or tortious interference with business relations; and (3) Johnson's arguments, which were raised in conjunction with an FDCPA action, were preempted by federal law. The trial court did not rule on the motion for limited discovery.

On December 17, 2021, Appellees filed a motion seeking attorney fees and costs pursuant to the Anti-SLAPP Statute. See OCGA § 9-11-11.1 (b.1) (granting "recovery of attorney[] fees and expenses of litigation related to the action" to a

discovery should then be "specified"). No public figures are involved in this action, however. Compare *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 654 (1) (c) (864 SE2d 422) (2021).

prevailing party). This motion, however, has not yet been considered by the trial court and remains pending below.

1. As previously indicated, Johnson does not ultimately challenge the judgment of the trial court that his claims against the Appellees were barred, only some of the alternative bases for this result. He states:

> The trial court did not err when it found as a matter of law that Appellant did not provide the pre-suit notice (which is undisputed) required by [the Abusive Litigation Statute], but the trial court did err when it then went outside the exclusive remedy provisions of [the Abusive Litigation Statute] and it dismissed the civil action as well under the Anti-SLAPP statute and other statutes.[3]

Because Johnson has conceded that his claims were properly barred as abusive litigation claims, we limit our analysis to the question of whether that infirmity may be considered as a reason for his action to be struck under the Anti-SLAPP Statute. To answer this question, we begin with the text of the relevant statutory provisions. OCGA § 9-11-11.1 (b) provides:

> (1) A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the

---

[3] Johnson's arguments show that his central contention is that the trial court improperly applied the Anti-SLAPP Statute, though his enumeration references other undefined "statutes."

6

State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

(2) In making the determination as provided for in paragraph (1) of this subsection, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based; provided, however, that if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual malice is relevant to the court's determination under paragraph (1) of this subsection.

In accordance with these provisions, the analysis of an Anti-SLAPP motion to strike involves two steps. First, the court must decide whether the party filing the Anti-SLAPP motion "has made a threshold showing that the challenged claim is one 'arising from' protected activity." *Wilkes*, supra, at 262 (2) (b) (quoting OCGA § 9-11-11.1 (b) (1)). If so, the court must "decide whether the plaintiff 'has established that there is a probability that the [plaintiff] will prevail on the claim.'" Id. (quoting OCGA § 9-11-11.1 (b) (1)). "But while viewing the evidence in this light, the court must also take into account the substantive evidentiary and legal standards that apply to [the] case[.]" *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 654 (1) (c) (864 SE2d 422) (2021).

With regard to the initial determination that a claim is subject to the Anti-SLAPP Statute, the

> critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. A defendant meets its burden by demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out in [OCGA § 9-11-11.1 (c) (1) - (4)].

*Wilkes*, supra, at 262 (2) (b) (citation and emphasis omitted). See also *Geer*, supra, at 284 (2). The Anti-SLAPP Statute defines an "act in furtherance of [a] person's . . . right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" to include a lawsuit ("[a]ny written or oral statement, writing, or petition made before a . . . judicial proceeding, . . . [or a]ny written or oral statement or writing or petition made in connection with an issue under consideration or review by a . . . judicial body"). OCGA § 9-11-11.1 (c) (1), (2). OCGA § 9-11-11.1 (c) creates an expansive definition of protected speech that includes *any* statement made to any official proceeding authorized by law or any statement made in connection with an issue under consideration by any official proceeding. See *Hagemann v. Berkman Wynhaven Assoc.*, 290 Ga. App. 677, 681 (660 SE2d 449) (2008).

In this case, the allegedly defamatory letter to Johnson from Alembik relates to the right to petition, as it regards one legal action that had already been filed (the Gwinnett action regarding the validity of the debt) and another action filed shortly thereafter based on the contents of the letter (the FDCPA action). This supports the trial court's finding that the Alembik letter was a protected act in furtherance of the right to petition (a finding that Johnson does not cogently challenge, in any event). Id.

The second step of the Anti-SLAPP analysis requires a determination as to whether

> the plaintiff has established that there is a probability that [he or she] will prevail on the claim. To meet this burden, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. . . . Only a claim that satisfies both prongs of the [A]nti-SLAPP statute — i.e., that arises from protected activity and lacks even minimal merit — is a SLAPP that is subject to being stricken.

*Wilkes*, supra, at 261-263 (2) (b) (citations, punctuation, and emphasis omitted). Here, the trial court found (and Johnson concedes) that Johnson's complaint was not legally sufficient and that he could not prevail on his claims because they comprised an

9

action for abusive litigation and Johnson had not satisfied the procedural requirements of the Abusive Litigation Statute.[4]

So, both prongs of the applicable test were satisfied, and the trial court properly determined that Johnson's claims were barred by the Anti-SLAPP Statute. Johnson's unsupported argument that the Anti-SLAPP Statute can *never* be applied to prevent an abusive litigation claim from going too far does not alter this result. Nothing in either the Anti-SLAPP Statute or the Abusive Litigation Statute precludes what the trial court did here. In fact, SLAPP claims, themselves, have been described as a form

---

[4] With regard to the procedural requirements for an abusive litigation matter, OCGA § 51-7-84 states:

> (a) As a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation.
>
> (b) An action or claim under this article requires the final termination of the proceeding in which the alleged abusive litigation occurred and must be brought within one year of the date of final termination.

10

of abusive litigation. See *Geer*, supra, at 283 (2) ("[T]he coverage of the [A]nti-SLAPP statute extends to abusive litigation that seeks to chill exercise of constitutional rights to free speech and petition based upon claims such as defamation, invasion of privacy, breach of contract, and intentional interference with contractual rights and opportunities arising from speech and petition of government."). An abusive litigation claim is simply a tort, and the Anti-SLAPP Statute does not limit the categories of SLAPP actions that might be subject to its procedure. We decline to impose such a limitation here, as it would interfere with the Anti-SLAPP Statute's codified purpose of curtailing actions such as this by giving persons and entities "who believe[] they have been subjected to a SLAPP an avenue for ending the suit quickly, summarily, and at minimal expense." Id. at 282.[5]

From the nature and focus of his arguments, it is evident that Johnson actually wants to address the potential imposition of attorney fees under the Anti-SLAPP Statute. He contends that allowing such fees would be inappropriate for a number of

---

[5] We also note that Johnson's claim for abusive litigation appears to be premature. Abusive litigation claims may only be brought once the underlying allegedly abusive litigation has been completed. See OCGA § 51-7-84 (b) ("An action or claim under this article requires the final termination of the proceeding in which the alleged abusive litigation occurred and must be brought within one year of the date of final termination."). The FDCPA action against Johnson remains ongoing.

11

reasons, including the application of the "exclusive remedy clause" of the Abusive Litigation Statute.[6] But the trial court has made no ruling on Appellees' motion for attorney fees at this juncture, so all of Johnson's arguments about the propriety of the trial court's consideration of Appellees' pending motion are not yet ripe. Simply put, there is no attorney fee ruling for our review, and we do not reach Johnson's arguments on this subject.[7] See, e. g., *Gilbert v. Montlick & Assocs*., 248 Ga. App. 535, 537 (4) (546 SE2d 895) (2001) (holding that an enumeration "is not ripe for appellate consideration" where it challenges an attorney fees award that "has not yet been determined by the trial court"). We find only that the trial court properly struck Johnson's claims pursuant to OCGA § 9-11-11.1.

2. Johnson also contends that the trial court erred by denying his motion for limited discovery on the topic of Appellees' alleged malice. Given Johnson's

---

[6] Among other contentions, Johnson argues that provisions allowing the recovery of attorney fees under the Anti-SLAPP Statute cannot be applied to abusive litigation claims. Compare OCGA § 9-11-11.1 (b.1) (granting attorney fees to a party who prevails on an Anti-SLAPP motion to strike) and OCGA § 51-7-83 (discussing damages and attorney fees in abusive litigation cases).

[7] The same rationale applies to Appellees' request for appellate fees based on the Anti-SLAPP Statute. This issue is not ripe for consideration, as the trial court has not yet been allowed to consider the propriety of any such fees at all. *Gilbert v. Montlick & Assocs*., 248 Ga. App. 535, 537 (4) (546 SE2d 895) (2001).

12

concession that his claims were barred, any request for discovery related to those claims is moot. There was no error.

*Judgment affirmed. Dillard, P. J., and Markle, J., concur.*